# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

ROSA RONCALES,

      **Plaintiff,**

v.                                 **Civil Action No. 3:19cv234**

COUNTY OF HENRICO, *et al.*,

      **Defendants.**

## MEMORANDUM OPINION

Plaintiff Rosa Roncales brings this civil action against her former employer, the County of Henrico (the "County of Henrico" or the "County"), and her former supervisors at the Henrico Fire Department: Anthony McDowell, Alec Oughton, Scotty Roberts, and Eugene Gerald (collectively with the County, "Defendants"). In her Second Amended Complaint, Roncales claims Defendants unlawfully terminated her from her position as a Henrico County firefighter. She brings two causes of action: (1) that Defendants violated the First Amendment when they terminated her after she participated in a political protest (the "First Amendment Retaliation Claim"); and, (2) that Defendants denied her due process when they infringed on her protected liberty interests to "engage in any of the common occupancies of life, including fire-fighting" and tarnished her good name by placing stigmatizing information in her personnel file, (the "Due Process Claim"). (Compl.,[1] ECF No. 30.)

Defendants moved to dismiss the Second Amended Complaint (the "Motion to Dismiss"), pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 31.) Roncales responded in opposition, (ECF No. 33), and Defendants replied, (ECF No. 34).

---

[1] For ease of reference, the Court cites the Second Amended Complaint as the Complaint.

These matters are ripe for adjudication. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331(a).[2] For the reasons that follow, the Court will grant in part and deny in part the Motion to Dismiss. The Court will allow Roncales's First Amendment Retaliation Claims against the individual Defendants, McDowell, Oughton, Roberts, and Gerald, to survive the Motion to Dismiss. The Court will allow Roncales's Due Process Claim against McDowell to survive the Motion to Dismiss. The Court will dismiss both claims against the County of Henrico and against McDowell in his official capacity.

---

[2] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331(a). Roncales brings her claims under the First Amendment and Fourteenth Amendments to the Constitution. (Compl. 1.)

## I. Factual and Procedural Background

Roncales brings this civil rights action pursuant to 42 U.S.C. § 1983[3] and the First[4] and Fourteenth Amendments[5] to the United States Constitution. Roncales brings her First Amendment Retaliation Claim against: (1) the County of Henrico; (2) McDowell, then the Henrico Fire Department Chief, in his individual and official capacities; (3) Alec Oughton, the Henrico Fire Department Assistant Chief, in his individual capacity; (4) Scotty Roberts, the Henrico Fire Department Battalion Chief, in his individual capacity; and, (5) Eugene Gerald, the Henrico Fire Department District Chief, in his individual capacity. (Compl. 2.) Roncales brings her Due Process Claim against (1) the County of Henrico; and, (2) McDowell, then the Henrico Fire Department Chief, in his individual and official capacities.[6] (*Id.*)

---

[3] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . . injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

[4] The First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST, amend. I.

[5] The Fourteenth Amendment states: "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST, amend. XIV, § 1.

[6] In the Complaint, Roncales brought both the First Amendment Retaliation Claim and the Due Process Claim against all Defendants. In response to the Motion to Dismiss, Roncales withdrew her Due Process Claim against Oughton, Roberts, and Gerald and proceeds only against the County of Henrico and McDowell. (Opp'n 14 n.13, ECF No. 33.)

## A.    **Factual Background**[7]

Roncales's claims stem from her termination from the Henrico Fire Department in April 2017. (Compl. ¶¶ 10, 38.) Before her termination from the Henrico Fire Department, Roncales had worked as a firefighter for more than five years, first at the Petersburg Fire Department and then for the County of Henrico. (*Id.* ¶ 10.) Roncales asserts that prior to the events described here she had intended on pursuing a career as a firefighter. (*Id.* ¶ 11.)

### 1.    **Circumstances Leading to Roncales's Termination on April 4, 2017**

The events leading to Roncales's April 2017 termination began in November 2016, shortly after the election of President Donald Trump. (*Id.* ¶ 12.) Roncales states that in November 2016 she "posted a graphic on her personal Facebook page severely critical of the incoming administration." (*Id.*) According to Roncales, Robert Owens and Ronnie Thomas, her supervisors at the Henrico Fire Department, warned her "'to be careful' about what she posted on social media." (*Id.* ¶ 13.) Owens and Thomas shared the post with Roncales's chain of command, including the individual Defendants, McDowell, Oughton, Roberts, and Gerald. (*Id.*) "Soon thereafter, [her] Facebook post was disseminated and spread among members of the [Henrico Fire Department]." (*Id.* ¶ 14.)

Approximately two months later, on January 20, 2017, Roncales says she "participated in a political march and rally in Washington, D.C., along with thousands of other participants, in opposition to the inauguration of Donald Trump." (*Id.* ¶ 15.) Roncales states that she "attended the protest on her own time and wore no clothing or other markings that would identify her" as a

---

[7] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For the purpose of the Rule 12(b)(6) Motion to Dismiss, "a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011)).

Henrico County firefighter. (*Id.* ¶ 16.) During that event she was "swept up in a large-scale arrest of several hundred people by the D.C. Metropolitan Police Department and, subsequently, charged with several offenses." (*Id.* ¶ 17.) The D.C. Metropolitan Police Department later dismissed the charges against Roncales. (*Id.*)

Henrico Fire Department policy required Roncales to report her arrest to her supervisor, Ronnie Thomas, which she did. (*Id.* ¶ 18.) Although Roncales asked her supervisor to keep her arrest confidential, she claims that this information "was immediately disseminated" throughout the department. (*Id.*) After disclosing her arrest, McDowell and Oughton transferred Roncales "to a light position, reducing her firefighting duties and responsibilities." (*Id.* ¶ 19.) Roncales states that, in late January, all of the Defendants knew about her Facebook post and the circumstances surrounding her arrest. (*Id.* ¶ 20.)

### 2. Roncales's Supervisors Question Her Three Times About the Protest

"Days later, on January 30, 2017," Roncales received a memorandum from "Oughton that she would be questioned as part of an . . . administrative investigation into her arrest." (*Id.* ¶ 21.) That same day, Roberts and Gerald conducted the questioning. (*Id.* ¶ 22.) Prior to receiving that memorandum, Roncales did not know that such questioning would occur. (*Id.*) Roncales states that after receiving the memorandum and before the questioning began, she "requested a brief delay so she could consult with her legal counsel but Defendants Roberts and Gerald instructed her that she had only until 2 p.m. to subject herself to their 'interrogation' or face termination." (*Id.*)

Roncales claims that McDowell and Oughton directed Roberts and Gerald to question her. (*Id.*) Roncales asserts that, before questioning, either Roberts or Oughton "commented that it would be 'sticky if she doesn't come clean.'" (*Id.* ¶ 25.) Roncales further alleges that either

Roberts or Oughton said someone instructed them to "hear that shit and nip it in the bud." (*Id.*)

During the January 30, 2017 questioning, Roncales was asked how she had "'become associated' with the group at the political rally and whether she had attended the rally because she 'had a similar ideology' to said group." (*Id.* ¶ 26.) Roncales states that she sat for questioning because she did not want to lose her job but the "investigation itself was a pretext" for her ultimate discharge. (*Id.* ¶ 23.)

One week after the initial questioning, on February 7, 2017, Roberts and Gerald again questioned Roncales. (*Id.* ¶ 24.) In the second round of questioning, "Roncales was specifically asked if she shared the political views of those with whom she was demonstrating. [Roncales] acknowledged that she did." (*Id.* ¶ 27.) Roncales further alleges that she was asked about what she wore during the rally, whether she had participated in other events with that organization, and "whether she shared the violent actions of some people." (*Id.* ¶ 28.) Roncales answered that "she had no intention to break the law and when she saw others doing so, she made every effort to get away from them." (*Id.* ¶ 29.) Roncales believes McDowell and Oughton approved Roberts and Gerald's questions regarding her political affiliations. (*Id.* ¶ 30.) Roncales further states that Roberts and Gerald discussed her responses with McDowell and Oughton. (*Id.*)

Roughly two months later, on April 4, 2017, Roncales met with McDowell and Oughton. (*Id.* ¶ 32.) During that meeting, McDowell told Roncales that "he believed there were discrepancies between what she told [Roberts and Gerald] and the information provided by the D.C. Metropolitan Police Department." (*Id.* ¶ 33.) Either McDowell or Oughton then told Roncales that the police "had a video of her watching the windows of a McDonalds being broken by protesters." (*Id.* ¶ 34.) Roncales told McDowell and Oughton that the allegation was not true

and that "her legal counsel had possession of a video demonstrating that was not true." (*Id.*) McDowell and Oughton responded that "they did not believe her." (*Id.* ¶ 35.)

Roncales claims that McDowell and Oughton asked her why she tried to disguise herself during the protest. (*Id.* ¶ 36.) In response, Roncales explained that she "wore simple, nondescript black clothing because she feared being 'doxxed,' which is a term used to describe the research and publication of personal details so others can target and harass the individual." (*Id.*) McDowell then terminated Roncales and told her that "her actions 'had made things harder for female firefighters.'" (*Id.* ¶ 37.) That same day, McDowell sent an email to the Henrico Fire Department, informing the department that Roncales had been terminated. (*Id.* ¶ 38.)

### 3. McDowell Formally Terminates Roncales and A Note is Placed in Her Personnel File Indicating that She was Terminated for Dishonesty

The next day, on April 5, 2017, McDowell formally terminated Roncales "based on material omissions and failure to be forthcoming during the investigation." (*Id.* ¶¶ 39–40.) Roncales "was charged with lying because she did not tell investigators she had a respirator with her in D.C. when she was asked if she had a gas mask." (*Id.* ¶ 41.) Roncales states that because she had training on the differences between a respirator and a gas mask, she did not consider the respirator to constitute a gas mask. (*Id.*) Roncales was also "accused of material omissions because some of the things she told [McDowell] on April 4, 2017 . . . had not previously been revealed." (*Id.* ¶ 42.) Roncales claims that she told McDowell that "she had covered identifiable markings on her clothing and backpack and had intermittently covered her face," but did not tell Roberts or Gerald the same because they "never asked any questions about these items during the investigation." (*Id.*) Roncales contends that McDowell charged her with lying and material omissions as a pretext for firing her because of her political beliefs and activities, which he learned about through her Facebook posting. (*Id.* ¶ 43.)

In her Complaint, Roncales alleges that in the first half of April 2017, after her termination, Defendants "placed or caused to be placed in [her] permanent personnel file the purported basis for her termination, namely a false statement of 'dishonesty.'" (*Id.* ¶ 44.) Roncales believes that "any public safety department" will have access to her personnel file and will make adverse employment decisions based on the statements contained in that file. (*Id.* ¶ 45.)

B.    **Procedural Background**

Based on these allegations, Roncales brings two claims. First, she asserts that Defendants violated her First Amendment rights when they subjected her to adverse treatment and termination "on account of [her] political views and activities accomplished." (*Id.* ¶ 53.) Second, Roncales avers that the County of Henrico and McDowell "intentionally, recklessly and in conscious disregard to [her] Fourteenth Amendment due process rights and liberty interests concocted a pretextual and false finding that [she] had lied, or been untruthful and dishonest" during the Fire Department's investigation into her arrest. (*Id.* ¶ 61.) Roncales contends that "[t]he conduct of [the County of Henrico and McDowell], including their false finding of 'dishonesty,' has caused and will continue to cause [her] scorn from the public at large and by prospective public safety employees in the future, particularly in the fire-fighting community," who will view or learn of the information in her file. (*Id.* ¶ 64.)

In response to the Second Amended Complaint, Defendants filed the instant Motion to Dismiss. Defendants argue that the Court must dismiss Roncales's second cause of action, the Due Process Claim, "because she fails to allege the required elements of that claim." (Mem. Supp. Mot. Dismiss 1, ECF No. 32.) Defendants further aver that the Court must grant the Motion to Dismiss because the individual Defendants are entitled to qualified immunity and that

the County of Henrico is immune from suit on both counts under the Supreme Court of the

United States' decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*Id.* 5.)

Lastly, Defendants contend that "any alleged actions taken by Defendants before April 3, 2017

fall outside the [two-year] statute of limitations and cannot be the basis of a due process claim."[8]

(*Id.*) Roncales responded and Defendants replied. The Court turns now to the merits of the

pending motion.

## II. Standard of Review: Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;

importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.

1992) (citing 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND

PROCEDURE § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain

sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that

states a claim for relief must contain . . . a short and plain statement of the claim showing that the

pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled

to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing

necessitate some factual enhancement within the complaint to cross the line between possibility

and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir.

2009) (internal quotation marks omitted).

---

[8] Roncales, acting *pro se*, filed her initial complaint on April 3, 2019. (ECF No. 1.)
After obtaining counsel, the Court allowed her to amend her complaint on May 28, 2019, (ECF
No. 11), and again on July 15, 2019, (ECF No. 30).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and "requires the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 678–79; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *Kolon Indus., Inc.*, 637 F.3d at 440)). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

### III.  Analysis

The Court first evaluates Defendants's assertion that the statute of limitations bars Roncales's allegations regarding the events that occurred prior to April 3, 2017. The Court then sets forth the two requirements for stating a qualified immunity defense before turning to Roncales's First Amendment Retaliation Claim. Next, the Court assesses Roncales's Due Process Claim. Because Roncales fails to allege facts to show that the Country of Henrico acted impermissibly, the Court will grant the Motion to Dismiss as to the County of Henrico and to McDowell in his official capacity. The Court will deny the Motion to Dismiss as to (1) the First Amendment Retaliation Claim brought against McDowell, Oughton, Roberts, and Gerald in their

individual capacities; and, (2) the Due Process Claim brought against McDowell in his individual capacity.

## A.    The Two-Year Statute of Limitations Does Not Bar Roncales's Claims

Defendants argue that the Court may not consider any actions "taken by Defendants before April 3, 2017" because such actions "fall outside of the statute of limitations." (Mem. Supp. Mot. Dismiss 5.)  Because the Court finds that Roncales's claims did not begin to accrue until her termination on April 4, 2017, the Court disagrees that the statute of limitations bars consideration of the events leading to her termination.

A defendant may raise the statute of limitations as a bar to the plaintiff's claims as an affirmative defense. *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).  The defendant bears the burden of establishing a statute of limitations defense. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).  A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "tests the sufficiency of the complaint," therefore, that motion "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Id.*  To properly raise a statute of limitations defense in a motion to dismiss, the complaint must include allegations supporting this time bar. *Id.*  In other words, a district court will reach a statute of limitations defense if the "time bar is apparent on the face of the complaint." *Dean*, 395 F.3d at 474 (citing *Bethel v. Jendoco Construction Corp.*, 570 F.2d 1168 (3d Cir. 1978)).

Here, it is apparent on the face of the Complaint that the applicable two-year statute of limitations does not bar Roncales's claims or the Court's consideration of her allegations that took place prior to April 4, 2017.  Although 42 U.S.C. § 1983 does not specify a limitations period, this Court looks to Virginia law for the appropriate statute of limitations. *Grattan v.*

*Burnett*, 710 F.2d 160, 162 (4th Cir. 1983) (finding that because § 1983 does not contain a statute of limitations, courts must look to state law "to borrow the limitations period for the most analogous state action"). Pursuant to Virginia law, a personal civil action, such as this, must be brought within two years. VA. CODE ANN. § 8.01-243(A) (2016) ("Unless otherwise provided in this section or by other statute, every action for personal injuries, whatever the theory of recovery, and every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues."); *see also* VA. CODE ANN. § 8.01-248 ("Every personal action accruing on or after July 1, 1995, for which no limitation is otherwise prescribed, shall be brought within two years after the right to bring such action has accrued."). The Parties do not dispute that the two-year limitations period applies.

While courts must look to state law to determine the applicable statute of limitations period for a § 1983 claim, the Court turns to federal law to resolve when Roncales's civil rights action accrued. *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975); *see also A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) ("The applicable statute of limitations begins to run once a claim accrues, and federal law controls that determination."). Federal law holds that "[a] civil rights claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *A Soc'y Without A Name*, 655 F.3d at 348 (internal quotation marks and citation omitted).

The face of the Complaint shows that Roncales's claims did not begin to accrue until April 4, 2017, when McDowell informed Roncales of the decision to end her employment with the Henrico Fire Department. At that moment, Roncales had "reason to know of the injury," her termination, "which is the basis of the action." *Id*. Roncales filed her initial Complaint on April 3, 2019, within the two-year limitations period, and the events leading to her termination are for

12

this Court to consider when resolving the instant Motion to Dismiss.[9] Therefore, Defendants have not met their burden of establishing a statute of limitations defense.

Having decided that the applicable two-year statute of limitations does not bar this action, the Court turns now to Roncales's claims against McDowell in his official capacity.

## B. Roncales Fails to State a First Amendment Retaliation Claim or a Due Process Claim Against McDowell in his Official Capacity

Roncales brings her First Amendment Retaliation Claim and Due Process Claim against McDowell in his official capacity. Because these claims duplicate of Roncales's claims against the County, the Court will dismiss them.

"Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal quotations omitted). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" and should be dismissed on the basis that it is duplicative. *Id.* at 166 (citing *Brandon v. Holt*, 496 U.S. 464, 471–72 (1985)).

Here, Roncales named as Defendants both the County of Henrico and McDowell, acting in his official capacity. The County had an opportunity to respond, meaning that the claims against McDowell in his official capacity are duplicative. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (recognizing that suits brought against governmental officers in their official capacity are

---

[9] In reaching this decision, the Court need not analyze the applicability of the Title VII "continuing violations" or "discrete acts" framework because Roncales' termination on April 4, 2017, started the clock for the statute of limitations analysis. *See O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006) (observing framework utilizing "'continuing violations' and 'discrete acts' is not an artifact of Title VII, but is rather a generic feature of federal employment law"). Simply put, the events leading to her termination are merely facts for the Court to consider when analyzing Roncales' claims and the instant Motion to Dismiss, rather than independent causes of action that the statute of limitations bars.

treated as suits against the government). Accordingly, the Court will dismiss the official capacity claims in Counts 1 and 2 against McDowell.

The Court turns next to Roncales's first cause of action, the First Amendment Retaliation Claim. Roncales brings this claim against all Defendants.

## C. The Court Will Deny in Part and Grant in Part the Motion to Dismiss as to Roncales's First Amendment Retaliation Claim

Roncales alleges facts sufficient to state her First Amendment Retaliation Claim against the individual Defendants, therefore, the Court will allow Roncales to proceed on that claim. Because Roncales does not allege facts sufficient to state her First Amendment Retaliation Claim against the County of Henrico, the Court will dismiss that claim as to the County.

### 1. At this Procedural Posture, Qualified Immunity Does Not Shield the Individual Defendants from Liability on Roncales's First Amendment Retaliation Claim

As to Roncales's First Amendment Retaliation Claim, Defendants argue that qualified immunity shields their actions because Oughton, Roberts, and Gerald did not make the decision to terminate Roncales's employment, and Roncales "fails to plead any facts to show wrongdoing by Oughton, Gerald, or Roberts."[10] (Mem. Supp. Mot. Dismiss 16.) Individual capacity claims are subject to scrutiny under the doctrine of qualified immunity. *Andrews v. City of Norfolk*, No. 2:16CV681, 2017 WL 4837707, at *5 (E.D. Va. Oct. 23, 2017). Here, qualified immunity does not shield McDowell, Oughton, Roberts, or Gerald from liability at the Motion to Dismiss stage.

Qualified immunity shields government officials from civil liability when they perform discretionary functions insofar as their conduct does not violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

---

[10] In the Motion to Dismiss, Defendants do not raise the same affirmative defenses and arguments for McDowell. (Mem. Supp. Mot. Dismiss 15–21.)

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The qualified immunity defense ensures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

> To overcome qualified immunity a plaintiff must meet a two-step inquiry:
>
> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009). (internal citations omitted). "Courts have discretion to take these steps in either order." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017) (citing *Pearson*, 555 U.S. at 236).

For Roncales's First Amendment Retaliation Claim to survive a qualified-immunity based 12(b)(6) motion to dismiss, Roncales must have plausibly alleged in her complaint that Defendants violated her constitutional rights. *Tobey v. Jones*, 706 F.3d 379, 386–87 (4th Cir. 2013). A complaint need only give the defendants fair notice of what the claim is and the groups upon which it rests. *Twombly*, 550 U.S. at 555. "A Rule 12(b)(6) motion to dismiss does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey*, 706 F.3d at 387 (internal quotation marks and citations omitted). With this in mind, the Court turns to the elements of a First Amendment Retaliation Claim, which Roncales must sufficiently allege to survive the first prong of the qualified immunity analysis.

### a.    Roncales Alleges a First Amendment Retaliation Claim as to the Individual Defendants

#### i.    Legal Standard:  First Amendment Retaliation Claim

"[A] First Amendment retaliation claim under § 1983 consists of three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity, (2) the defendant took an action that adversely affected that protected activity, and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct." *Booker*, 855 F.3d at 537; *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000) (accord).[11]

As to the first element, the United States Court of Appeals for the Fourth Circuit has held that peacefully participating in a political protest constitutes protected First Amendment activity. *Am. Life League, Inc. v. Reno*, 47 F.3d 642, 648 (4th Cir. 1995) ("The right to peaceful protest lies near the heart of the freedom of speech."). With respect to the second element, the determination as to whether a defendant's actions "adversely affected [the plaintiff's] First Amendment rights," *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (citation omitted), is a fact-specific inquiry, which considers the actors involved and their relationships. *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006). As to the third element, causation, a plaintiff must allege facts sufficient to show a causal connection between the First Amendment activity and the alleged adverse action. *See Constantine*, 411 F.3d

---

[11] The Court considers only whether Roncales has stated a First Amendment Retaliation Claim. To be sure, "[t]o prevail on such a claim, a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (internal quotation marks and citation omitted). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* Further discovery may shed light on whether or not Roncales can meet this "rigorous" requirement, but without further discovery, the Court cannot speculate as to the outcome of what Roncales may be able to prove. *Tobey*, 706 F.3d at 391.

at 501. "In order to establish this causal connection, a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of [his or] her engaging in protected activity." *Id.* (citation omitted). However, "'[k]nowledge alone . . . does not establish a causal connection' between the protected activity and the adverse action." *Id.* (quoting *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)). There must also be circumstantial evidence, such as evidence that the retaliation took place within some "temporal proximity" of the protected activity, or direct evidence of a retaliatory motive. *Id.*

### ii. Roncales States a First Amendment Retaliation Claim Against McDowell

Defendants do not argue in the Motion to Dismiss that Roncales fails to state a First Amendment Retaliation Claim against McDowell. In any event, because Roncales's allegations satisfy the elements of a First Amendment Retaliation Claim against McDowell, the Court would deny such an argument.

Roncales's complaint satisfies all three elements of a First Amendment Retaliation Claim as to McDowell because she alleges that (1) she engaged in a constitutionally protected non-violent protest, (Compl. ¶¶ 17–18);[12] (2) McDowell terminated her employment as a result of her participation in that protest and because of her associated political beliefs, (*Id.* ¶¶ 39, 43); and, (3) the temporal proximity of her protest followed by her termination indicates that McDowell may have engaged in impermissible retaliation, (*Id.* ¶¶ 15, 18, 43–44). As a result, Roncales has stated a First Amendment Retaliation Claim against McDowell.

---

[12] Roncales alleges that she peacefully exercised her right to free speech by engaging in a political protest. Although a dispute exists as to whether Roncales was seen participating in or observing violent acts during the protest in question, at this stage of the litigation the Court assumes the truth of her allegations.

### iii. Roncales States a First Amendment Retaliation Claim Against Oughton, Roberts, and Gerald

The Court finds, at this procedural posture, that Roncales has stated a First Amendment

Retaliation Claim as to Oughton, Roberts, and Gerald. As Defendants summarize, "Roncales

alleges that all Defendants presumed her dishonesty, subjected her to an investigation, subjected

her to successive interrogations under the threat of termination, questioned her political

affiliations and viewpoints, made findings as part of an administrative investigation, and falsely

stated that she was dishonest without providing her due process." (Mem. Supp. Mot. Dismiss

18.) These actions, taken together, indicate that Oughton, Roberts, and Gerald may have taken

adverse actions against Roncales for her protected political speech, that they so acted because of

her political views, and that a causal relationship existed between Roncales's engagement in

constitutionally protected activity and their conduct. As a result, the factual allegations in the

Complaint, viewed as a whole, have facial plausibility sufficient to state a First Amendment

Retaliation Claim. *Iqbal*, 556 U.S. at 678.

The cases Defendants cite in the Motion to Dismiss do not compel a different result.

Defendants argue that Roncales's allegations as to Oughton, Roberts, and Gerald, including "her

investigation and interrogation," are not actionable. (Mem. Supp. Mot. Dismiss 18.) Defendants

point to *Suarez Corporation Industries v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000), and

*Trueman v. United States,* No. 7:12-CV-73-F, 2015 WL 1456134 (E.D.N.C. Mar. 30, 2015),

*aff'd*, 615 F. App'x 122 (4th Cir. 2015), to support their position that the facts, as alleged, do not

suffice to show that Oughton, Roberts, and Gerald engaged in retaliatory activity. *Suarez* and

*Trueman* are distinguishable from the allegations presented here.

In *Suarez*, the case came before the court on motions for summary judgment, a different

procedural posture than the instant Motion to Dismiss. 202 F.3d at 680. *Suarez* involved a First

Amendment retaliation claim by a direct mail marketer and some of its customers against the Attorney General of West Virginia and one of his deputies. *Id.* The plaintiffs attributed a variety of alleged defamatory statements to the defendants that ostensibly chilled plaintiffs' exercise of their First Amendment rights. *Id.* at 683.

On appeal, the Fourth Circuit first observed that "[d]etermining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Id.* at 686. The Fourth Circuit explained that the retaliatory act must be "more than *de minimis* or trivial." *Id.* On one hand, a government employer takes a sufficiently retaliatory action against an employee when the employer makes decisions that relate to the "promotion, transfer, recall, and hiring" of the employee based on the employee's exercise of his or her First Amendment rights. *Id.* (quoting *Rutan v. Republican Party*, 497 U.S. 62, 79 (1990)). On the other hand, when the government employer takes an action that simply "critici[zes], false[ly] accus[es], or verbal[ly] reprimands" the employee, the action is insufficiently retaliatory. *Id.* The Fourth Circuit ultimately concluded that the appropriate inquiry to determine whether the defendants had adversely affected the plaintiff's "First Amendment speech rights" required examining whether "[the defendants's] speech was threatening, coercive, or intimidating so as to intimate that punishment, sanction, or adverse regulatory action will imminently follow." *Id.* at 689.

Here, Roncales's allegations, taken as true, show that Oughton, Roberts, and Gerald went beyond *de minimis* or trivial actions. Rather, their alleged actions included (1) McDowell and Oughton moving Roncales to a light position, (Compl. ¶ 19); (2) Roberts and Gerald subjecting Roncales to same day questioning—without accommodating her request to first speak with her

attorney—under the threat of termination, (*Id.* ¶ 22); (3) Roberts and Gerald discussing their investigation of Roncales with Oughton and McDowell (*Id.* ¶¶ 30–31); and, (4) McDowell and Oughton meeting with Roncales on April 4, 2017 and acting on this chain of events by terminating her employment, (*Id.* ¶¶ 32–33). As plausibly alleged, the actions of Oughton, Roberts, and Gerald appear sufficiently coercive and intimidating, and Roncales's termination from the Henrico Fire Department followed almost immediately. Therefore, Suarez does not provide the support Defendants seek.

Nor does *Trueman* compel a different result. In *Trueman*, the *pro se* plaintiff based his first amendment retaliation claim on an alleged pending criminal investigation involving the Office of the Inspector General for Veterans Affairs. 2015 WL 1456134, at *13. Specifically, "Trueman allege[d] that [defendant] informed him that he had committed fraud by filing for an Improved Pension in 2005 and that an indictment was coming Trueman's way because he plays baseball once or twice a week." *Id.* Because there had been no adverse action taken against Trueman apart from the suggestion of an investigation, the district court found that he had failed to state a First Amendment retaliation claim. *Id.* ("At most, Plaintiff could allege that [defendant] conducted a retaliatory investigation against him.").

In contrast to *Trueman*, Roncales does not allege that she suffered a mere retaliatory investigation. Rather, Roncales claims that Defendants terminated her employment immediately after the investigation surrounding her participation in a protest.[13] Therefore, Trueman also fails

---

[13] It appears that the Fourth Circuit has not determined whether an investigation, standing alone, can give rise to a First Amendment retaliation claim. *Trueman*, 2015 WL 1456134. But Roncales alleges more than a retaliatory investigation here. She alleges that Defendants terminated her employment following an investigation. This termination sufficiently shows an adverse action for a First Amendment Retaliation Claim.

to provide the support Defendants seek. Roncales states a First Amendment Retaliation Claim against Oughton, Gerald, and Roberts.

### b. Roncales's First Amendment Rights Were Clearly Established

Having determined Roncales sufficiently alleged a First Amendment Retaliation Claim against individual Defendants, the Court must next consider whether Roncales's First Amendment rights were clearly established. When deciding whether a right is clearly established, the Court must consider whether it would be clear to a reasonable official that his or her "conduct was unlawful in the situation he [or she] confronted." *Henry v. Purnell*, 652 F.3d 524, 534 (4th Cir. 2011) *(en banc)*. For this step of the analysis, the Fourth Circuit has repeatedly "held that it is not required that a right violated already have been recognized by a court in a specific context before such right may be held 'clearly established' for purposes of qualified immunity." *Meyers v. Baltimore County*, 713 F.3d 723, 734 (4th Cir. 2013) (observing that "officials can still be on notice that their conduct violates established law even in novel factual circumstances").

### i. Roncales Spoke as a Citizen and Her Speech Addressed Matters of Public Concern, Qualifying it For First Amendment Protection

"A bedrock First Amendment principle is that citizens have a right to voice dissent from government policies." *Tobey*, 706 F.3d at 391; *see also Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1954–55 (2018) (observing the "right to petition as one of the most precious of the liberties safeguarded by the Bill of Rights" and the right to free speech "high in the hierarchy of First Amendment values"). A government employer "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression," *Connick v. Myers*, 461 U.S. 138, 142 (1983), and "a public official may not misuse his [or her]

21

power to retaliate against an individual for the exercise of a valid constitutional right," *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001). "This holds true even when the act of the public official, absent the retaliatory motive, would otherwise have been proper." *Id.* at 405–06.

For the statements of a public employee, such as Roncales, to receive First Amendment protection, the public employee must speak as a citizen and address matters of public concern. *Grutzmacher v. Howard County*, 851 F.3d 332, 344 (4th Cir. 2017). "Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." *Id.* at 343 (quoting *Urofsky v. Gilmore*, 216 F.3d 401, 406 (4th Cir. 2000) (en banc)) (discussing when Facebook activity, a recognized form of speech, pertains to issues of public concern that may qualify it for First Amendment protection).

Roncales alleges that she acted as a private citizen on her own time when attending the political protest and that Defendants terminated her because of her political affiliations. (Compl. ¶¶ 16, 43–44.) At this stage, taking the allegations as true, Roncales has stated the she acted as a private citizen peacefully protesting about a matter of public concern, meaning her speech receives First Amendment protection. Because Roncales's speech, which allegedly occurred on her own time in plain clothing, involved a political issue regarding the incoming administration and the inauguration of President Donald Trump, the Court finds that it qualifies for First Amendment protection.

ii.          **Roncales Alleges that Oughton, Gerald, and Roberts Had Personal Involvement in the Constitutional Violation**

Defendants Oughton, Gerald, and Roberts argue that they did not violate Roncales's constitutional rights because "[t]here is no clearly established [controlling] case law stating that an investigation constitutes an adverse employment action." (Mem. Supp. Mot. Dismiss 20.)

Defendants Oughton, Roberts, and Gerald further state that controlling case law has not clearly established than an individual who did not make the termination decision can be held liable for First Amendment retaliation. (*Id.*) But Roncales's claims do not allege that a mere investigation occurred or that Oughton, Gerald, and Roberts—her former supervisors—had no part in the process surrounding Roncales's termination. Instead, Roncales specifically alleges that Oughton, Roberts, and Gerald contributed to the termination process, including her "transfer to a light position," (Compl. ¶ 19), and by instructing her to answer questions about her arrest at a political rally "or face termination." (*Id.* ¶ 22.) Roncales further alleges that Oughton, Roberts, or Gerald made certain statements about the investigation, including that it would be "sticky if she doesn't come clean." (*Id.* ¶ 25.) Roncales claims that Roberts and Gerald shared information with Oughton and McDowell before her termination. (Compl. ¶¶ 31–33.) At this stage of the litigation, Roncales sufficiently alleges that Oughton, Roberts, and Gerald personally contributed to the decision to end her employment.

This conclusion comports with case law that requires a plaintiff to allege or show a defendant's personal involvement in the constitutional violation before § 1983 liability can be found. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) ("In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." (internal quotation marks and citations omitted)).[14]

---

[14] Other circuits similarly require personal involvement before finding liability. *Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005) (To prevail in a First Amendment retaliation claim under 42 U.S.C. § 1983, "a plaintiff must show by a preponderance of the evidence that the defendant was personally involved—that is, he [or she] directly participated— in the alleged constitutional deprivations"); *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003), *as amended* (May 29, 2003) ("a defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable" (internal quotation marks and citations omitted)); *Meyer v. Reno*, 911 F.Supp. 11, 15 (D.D.C. 1996) (holding that defendant-supervisors could be liable under *Bivens*, the federal corollary to § 1983 claims, if they "personally participated in the events which gave rise to the plaintiff's claims").

Roncales's allegations suffice to show that Oughton, Roberts, and Gerald had "personal knowledge of and involvement" in the alleged deprivation of Roncales's constitutional rights. *Id.* This suffices to defeat qualified immunity at this procedural posture.

Although McDowell, Oughton, Roberts, and Gerald may yet possess a claim of qualified immunity in their individual capacities, the Court cannot conclusively reach that finding at this stage of the litigation. What the individual Defendants did here may be better explained through discovery. Indeed, case law provides that "where there is a material dispute over what the defendant did . . . it may be that the qualified immunity question cannot be resolved without discovery." *DiMeglio v. Haines,* 45 F.3d 790, 795 (4th Cir. 1995). Should discovery reveal there exists no genuine issue of material fact, the individual Defendants can move for summary judgment. *See Behrens v. Pelletier,* 516 U.S. 299, 306–07 (1996) (recognizing that a defendant can raise the qualified-immunity defense at both the motion to dismiss and summary judgment stage). At this procedural posture, however, the Court concludes that qualified immunity does not protect McDowell, Oughton, Roberts, or Gerald from liability. The Court will deny the Motion to Dismiss as to the individual Defendants.

**2. Roncales Fails to State a First Amendment Retaliation Claim as to the County of Henrico**

Although the Court will allow Roncales's First Amendment Retaliation Claim to continue against the individual Defendants, the Court will dismiss this claim against the County of Henrico because Roncales fails to allege an unconstitutional policy or custom that would subject the County to liability.

**a.** *Monell* **Limits Locality Liability for § 1983 Claims**

Roncales brings her claims pursuant to § 1983. Title 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "A municipality or other local government may be liable under this section if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 692 (1978)).

Through *Monell*, however, the Supreme Court has expressly cabined the liability of local governments. A local government cannot be held liable solely because one of its employees has violated the constitutional rights of another. *Monell*, 436 U.S. at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. Thus, under § 1983, local governments are responsible for only "their own illegal acts." *Connick*, 563 U.S. at 60. They cannot be held vicariously liable under § 1983 for their employees' actions. *Monell*, 436 U.S. at 691.

To determine the liability of a local government, courts must "(1) identify the specific policy or custom; (2) fairly attribute the policy and fault for its creation to the [local government]; and (3) find the necessary affirmative link between [the] identified policy or custom and [the] specific [alleged] violation." *Guerrero v. Deane*, 750 F. Supp. 2d 631, 656 (E.D. Va. 2010), *aff'd sub nom. Guerrero v. Moore*, 442 F. App'x 57 (4th Cir. 2011).[15] The

---

[15] As to the affirmative defense of qualified immunity, claims against municipalities differ from claims against government officials. Unlike claims against officials, which are subject to a qualified immunity defense, claims against local governments "are measured against

Fourth Circuit has identified four instances in which a § 1983 plaintiff may hold a local

government liable for a policy or custom:

> (1) through an express policy, such as a written ordinance or regulation; (2) through
> the decisions of a person with final policymaking authority; (3) through an
> omission, such as a failure to properly train officers, that "manifest[s] deliberate
> indifference to the rights of citizens;" or (4) through a practice that is so "persistent
> and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217

(4th Cir. 1999)). The Court examines whether Roncales's Complaint sufficiently alleges locality

liability in conformance with *Monell* and its progeny.

### b. Roncales Fails to State a First Amendment Retaliation Claim Against the County

Here, Roncales's Complaint fails to plausibly allege facts showing that the County of

Henrico caused the constitutional violation under any of the four *Lytle* prongs. Regarding the

first *Lytle* prong, Roncales does not allege that the County of Henrico maintained an express

policy that led to the constitutional violation. Regarding the third *Lytle* prong, Roncales did not

allege that the County failed to train its employees on free speech. Regarding the fourth *Lytle*

prong, Roncales does not allege that first amendment retaliation practices are so widespread in

the County of Henrico that they constitute a custom or usage with the force of law. Nor does she

allege that other county employees had been terminated from their employment in retaliation for

exercising his or her First Amendment free speech rights.

Nor does Roncales's Complaint allege facts sufficient to state a claim of locality liability

pursuant to the second *Lytle* prong, which encompasses the "decisions of a person with final

policy making authority." *Id.* Roncales alleges that McDowell made the decision regarding her

---

current law," and their obligations need not have been "clearly established" at the time of the
alleged violations. *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 402 (4th Cir.
2014).

termination, but "not every decision by every municipal official will subject a municipality to section 1983 liability." *Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000). Rather, locality liability attaches "only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (citation omitted). To qualify as a "final policymaking official," an official must have the responsibility and authority to implement final locality policy with respect to a particular course of action. *Riddick*, 238 F.3d at 523; *see also Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987) ("'[P]olicymaking authority' implies authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government."). When determining which officials possess final policymaking authority for the allegedly unconstitutional action in question, courts "must look to the relevant legal materials, including state and local positive law, as well as custom or usage having the force of law." *Riddick*, 238 F.3d at 523.

State and local law establish that McDowell did not have final policymaking authority regarding personnel issues, nor does Roncales's Complaint allege otherwise. Although Roncales alleges that McDowell acted as the final decision maker, that does not equate to policymaking authority. Under Virginia law, for the county manager form of government, such as the County of Henrico, "[t]he department of public safety . . . shall be under the supervision of a director of public safety appointed by the county manager." VA. CODE ANN. § 15.2-632 (2010). Relevant here, the same statute provides that such departments of public safety include the "[d]ivision of fire protection, in charge of a fire chief and consisting of such fire fighters, and other personnel as may be appointed." *Id.* Locally, County of Henrico policies and resolutions, which this Court may consider, conform with Virginia state law. (*See* ECF No. 34, Ex. A.) For example, "the

Board of Supervisors for the County, by official legislative action, granted the County Manager, not the Fire Chief, policymaking authority regarding personnel issues." (Reply 9, ECF No. 34 (citing Cty. of Henrico, Va. Bd. of Supervisors Agenda Item No. 642-79, Dec. 12, 1979).) As a result, McDowell, then the Henrico County Fire Department Chief, did not have the authority to enact policy, nor does Roncales allege that he did. As a result, Roncales's allegations do not satisfy the second *Lytle* prong.

Because "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents," *Monell*, 436 U.S. at 694, Roncales's allegations fail to state a First Amendment Retaliation Claim against the County of Henrico. Accordingly, the Court will dismiss Roncales's First Amendment Retaliation Claim against the County of Henrico. The Court turns now to Roncales's Due Process Claim.

### D.     The Court Must Deny in Part and Grant in Part the Motion to Dismiss as to Roncales's Due Process Claim

Roncales brings her second cause of action—the Due Process Claim—against McDowell and the County. Roncales states a Due Process Claim as to McDowell in his individual capacity. However, Roncales's allegations fail to state a Due Process Claim against the County of Henrico. Roncales voluntarily dismissed her Due Process Claim against Oughton, Gerald, and Roberts. Therefore, the Court will grant in part and deny in part the Motion to Dismiss as to Roncales's Due Process Claim.

In the Motion to Dismiss, Defendants primarily argue that Roncales fails to allege the required elements for a due process deprivation of liberty interest claim. (Mem. Supp. Mot. Dismiss 5–11.) Defendants then contend that they are entitled to qualified immunity for the Due Process Claim because "their conduct did not violate clearly established constitutional rights of which a reasonable person would have known." (*Id.* 13.) For Roncales's Due Process Claim to

survive a qualified-immunity based 12(b)(6) motion to dismiss, Roncales must have plausibly

alleged in her complaint that McDowell and the County of Henrico denied her due process.

*Tobey*, 706 F.3d at 386–87. If so, the Court must then determine whether this right was clearly

established at the time of the alleged violation. With this in mind, the Court turns to the elements

of a Due Process Claim based on the deprivation of liberty, the first step of the qualified

immunity analysis.

### 1. Roncales Alleges a Due Process Claim Based on a Liberty Deprivation

#### a. Legal Standard: Due Process Deprivation of Liberty Claims

Roncales's Due Process Claim arises from the combination of two rights protected by the

Fourteenth Amendment: "(1) the liberty to engage in any of the common occupations of life,

and (2) the right to due process where a person's good name, reputation, honor, or integrity is at

stake because of what the government is doing to him [or her]." *Sciolino v. City of Newport*

*News*, 480 F.3d 642, 646 (4th Cir. 2007) (internal quotation marks and citations omitted).

"There are two components to a claim that a governmental employer violated a former

employee's Fourteenth Amendment rights by publicly disclosing the reasons for the employee's

discharge." *Cannon v. Village of Bald Head Island,* 891 F.3d 489, 501 (4th Cir. 2018).[16] First,

Roncales must allege that the charges against her: "(1) placed a stigma on [her] reputation; (2)

were made public by the employer; (3) were made in conjunction with [her] termination or

demotion; and (4) were false." *Sciolino*, 480 F.3d at 646. Second, Roncales "must demonstrate

that [her] liberty was deprived without due process of law." *Cannon*, 891 F.3d at 501.

To find that Roncales sufficiently alleged her Due Process Claim, the first prong of the

qualified immunity inquiry, the Court must consider (1) whether Roncales alleges that she was

---

[16] The *Cannon* court considered claims at the summary judgment stage, after the parties
completed discovery. 891 F.3d at 494.

deprived of a protected liberty interest; and, (2) if so, whether Roncales alleges she was deprived of that interest without due process of law. *Cannon*, 891 F.3d at 502.

### b. Roncales's Allegations Against McDowell Satisfy the Four *Sciolino* Prongs

The Court first evaluates Roncales's allegations under the four *Sciolino* prongs. 480 F.3d at 646. In the Motion to Dismiss, Defendants[17] contend that Roncales failed to state the required elements of her Due Process Claim because "Roncales fails to identify any specific false or stigmatizing charge made in conjunction with her termination." (Mem. Supp. Mot. Dismiss 5.) Defendants assert that after picking "through fifty-five paragraphs of her Second Amended Complaint, a court could find – at most – four pieces of information that Roncales claims were communicated about her:" (1) Defendants sharing her Facebook post that was critical of President Trump; (2) disclosing her arrest; (3) notice of her termination; and, (4) placing records in her personnel file. (*Id.* 5–6.) Taking as true these allegations, Roncales's Complaint states a Due Process Claim because the record added to her personnel file satisfies the *Sciolino* requirements.

The first *Sciolino* prong requires the Court to determine whether Roncales alleged that the challenged action placed a stigma on her reputation. *Sciolino*, 480 F.3d at 646. Roncales alleges that she was terminated for "lying" and "material omissions," and that Defendants "placed or caused to be placed in [her] permanent personnel file the purported basis for her termination, namely a false statement of 'dishonesty.'" (Compl. ¶¶ 41–44.) "For over thirty years, [the Fourth Circuit] has held that a governmental disclosure places a stigma on a former employee sufficient to give rise to a liberty interest claim if it implies the existence of serious

---

[17] Although the Court refers to "Defendants," Roncales proceeds against only McDowell and the County for her Due Process Claim.

character defects such as dishonesty or immorality." *Cannon*, 891 F.3d at 502 (internal

quotation marks and citations omitted).  Roncales alleges that Defendants placed a stigma on her

by labeling her dishonest, a serious character defect.  As a result, Roncales satisfies the first

*Sciolino* prong.

The second *Sciolino* prong requires the Court to determine whether Defendants made the

information public.  *Sciolino*, 480 F.3d at 646.  Relevant here, the Fourth Circuit has held that

"an employee must allege (and ultimately prove) a *likelihood* that prospective employers (i.e.,

employers to whom he [or she] will apply) or the public at large will inspect the" personnel file

containing the damaging information.  *Id.* at 650 (emphasis added).  The Fourth Circuit then

described two ways plaintiffs may meet this standard.  *Id.*  First, the plaintiff can allege that the

defendant releases personnel files to all inquiring employers as a matter of course.  *Id.*  Second,

the plaintiff can allege that, even though defendant releases files only to certain employers,

plaintiff intends to apply to one of those employers.  *Id.*  Likewise the Fourth Circuit established

nearly thirty years ago that discharged governmental employees, like Roncales, have "a right that

[her] personnel file contain no substantially false information with respect to [her] work

performance or the reasons for [her] discharge when that information is available to prospective

employers." *Ledford v. Delancey*, 612 F.2d 883, 887 (4th Cir. 1980).

Reading all well-pleaded factual allegations as true and making all reasonable inferences

in favor of Roncales, she plausibly alleges that "any public safety department . . . *will* have

access to" her personnel file and that she "had intended on pursuing a career as a fire-fighter."

(Compl. ¶¶ 11, 45 (emphasis added).)  The Fourth Circuit made clear in *Sciolino* and *Ledford*

that the availability of personnel files to prospective employers may give rise to a

constitutionally cognizable public disclosure. *See Sciolino*, 480 F.3d at 646; *Ledford*, 612 F.2d at 887. Roncales's allegations therefore satisfy the second *Sciolino* prong.

The third *Sciolino* prong requires the Court to determine whether Defendants made the statement in conjunction with her termination. *Sciolino*, 480 F.3d at 646. As alleged, Defendants placed the statement regarding Roncales's dishonesty in her personnel file either on the same date McDowell terminated her employment or shortly after. (Compl. ¶ 44.) Roncales also alleges that Defendants terminated her employment for "lying" and "material omissions." (Compl. ¶¶ 41–42.) These allegations satisfy the third *Sciolino* prong.

Finally, the fourth *Sciolino* prong requires the Court to determine whether Defendants made a false statement about Roncales. *Sciolino*, 480 F.3d at 646. At this stage of the litigation, the Court finds that the Complaint plausibly alleges that McDowell made false statements about Roncales's veracity during the investigation process and her subsequent termination. *Cf. McCray v. Infused Sols., LLC*, No. 4:14cv158, 2017 WL 4111958, at *3 (E.D. Va. Sept. 15, 2017) ("At the Motion to Dismiss stage, the Court must accept as false any statements which the Complaint alleges to be false."). Because Roncales's allegations show that McDowell may have made false and stigmatizing charges regarding the grounds for her termination, she has satisfied *Sciolino*'s four prongs. As a result, this demonstrates that, as alleged, McDowell deprived her of a protected liberty interest under clearly established law.

### c. Roncales's Allegations Show Her Liberty was Deprived without Due Process of Law

After establishing that Roncales's Complaint satisfies the four *Sciolino* prongs, the Court must determine whether Roncales's allegations could demonstrate that her liberty was deprived without due process of law, the second component of her Due Process Claim. *Cannon*, 891 F.3d at 501. To that end, the Supreme Court has recognized that, when a governmental employer

places an employee's reputation "at stake" by publicly disclosing defamatory charges, "notice and opportunity to be heard are essential." *Id.* (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972)). The Fourth Circuit has explained that the opportunity to be heard "must be granted at a meaningful time" and that the "opportunity to clear your name after it has been ruined by dissemination of false, stigmatizing charges is not meaningful." *Id.* (internal quotations marks and citations omitted). At this procedural posture, Roncales's allegations suffice to show that McDowell did not provide her with an adversarial, pre-termination hearing before he gave false information regarding the basis for Roncales's termination, which will impact her ability to obtain new employment. *See id.* at 506.

Here, Roncales alleges that she never received a name-clearing hearing or the opportunity to present her case before her employment ended at the Henrico Fire Department. Specifically, Roncales claims that Defendants questioned her regarding her participation in a political protest, that she did not have the opportunity to speak to her legal counsel before questioning, that video evidence existed that would have shown she participated in only non-violent protest, that she "told her superiors that her legal counsel had possession of a video demonstrating" the veracity of her claims, (Compl. ¶ 34), and that Defendants used the event as a pretext to terminate her employment from the Henrico Fire Department for her political beliefs. For this claim, Roncales maintains that she was "deprived of the fair and unbiased opportunity for a hearing, whether name-clearing or otherwise, to rebut the Defendants' representations, and to present her side of the story." (Compl. ¶ 60.) Based on these allegations, Roncales sufficiently alleges her Due Process Claim.

## 2. **Roncales's Due Process Rights Were Clearly Established**

To complete the qualified immunity analysis, the Court must decide whether the right at issue, Roncales's Due Process Claim, was "clearly established" at the time of Defendant's alleged misconduct. At this stage, Roncales has alleged a violation of clearly established Due Process rights.

For a right to be clearly established, there need not be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Cannon*, 891 F.3d at 497. Case law has long recognized the right to a name-clearing hearing prior to termination of public employment. *See, e.g., Fields v. Durham*, 909 F.2d 94, 97 (4th Cir. 1990) (noting that the Supreme Court has emphasized "that the Due Process Clause normally requires a hearing before the State deprives a person of liberty or property"); *Johnson v. Morris*, 903 F.2d 996, 999 (4th Cir. 1990) (accord). As alleged, Roncales states she did not have the opportunity to present her side of the story to McDowell before he made the decision to terminate her employment. Roncales further states that Defendants placed stigmatizing information in her personnel file.

The Court concludes that under clearly established law, McDowell's termination of Roncales and the authorization of stigmatizing information placed in her personnel file suffices to state a Due Process Claim based on deprivation of liberty against McDowell in his individual capacity. Fourth Circuit precedent readily establishes that refusing to offer a name-clearing hearing before termination offends due process. Accordingly, the Court will deny the Motion to Dismiss as to Roncales's Due Process Claim against McDowell.[18]

---

[18] To be sure, discovery may reveal more information regarding whether McDowell provided Roncales with the opportunity to make her case before terminating her and placing stigmatizing information in her personnel file. The Court makes no postulations based on the

34

### 3. The Court Will Dismiss the Due Process Claim Against the County of Henrico

As stated above, the Supreme Court has expressly cabined the liability of local governments through *Monell*. A local government cannot be held liable solely because one of its employees has violated the constitutional rights of another. *Monell*, 436 U.S. at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. Thus, under § 1983, local governments are responsible for only "their own illegal acts." *Connick*, 563 U.S. at 60.

Here, Roncales does not allege that the County of Henrico engaged in its own illegal act regarding her termination or the decision to add stigmatizing information to her personnel file. Roncales does not allege any defective policy or custom on the part of the County regarding pre-termination hearings. Nor does she allege that other county employees had been terminated from their employment without the opportunity for a pre-termination hearing. And, for the same reasons discussed above, McDowell did not act as an official with final policymaking authority regarding personnel issues. Because "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents," *Monell*, 436 U.S. at 694, Roncales's allegations fail to state a Due Process Claim against the County of Henrico. The Court will grant the Motion to Dismiss as to Roncales's Due Process Claim against the County of Henrico.

---

limited record before it. Should this be the case, McDowell can move for summary judgment on a more developed record.

## IV. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part the Motion to

Dismiss, (ECF No. 31).

An appropriate order shall issue.

_____ /s/

M. Hannah Lauck
United States District Judge

Date: 3|31|2020
Richmond, Virginia